UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 10-10100-PBS |
| REGINALD MOUSCARDY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

June 28, 2011

Saris, U.S.D.J.

Defendant Reginald Mouscardy moves to suppress a gun found on his person when police responded to a 911 call reporting a domestic disturbance. After an evidentiary hearing on May 13, 2011, the motion to suppress is **DENIED**.

**I. Facts**

On March 11, 2010, at approximately 12:30 p.m., a person called 911 to report an assault. During the 911 call, an audio recording of which was submitted as evidence, the unidentified caller reported that he saw a "man beating up his girlfriend or his wife;" he further explained that the man was "giving it to her pretty good." (Gov't Ex. 1.) The man then described the physical appearances of the male and female involved in the alleged assault.

Everett Police Officer Matthew Cunningham and Sergeant

1

Robert Zaino were the first to respond to the scene after receiving a report of a "possible domestic assault in progress" on the corners of Belmont and Ferry Streets. When the officers responded, they identified a female and male fitting the descriptions from the 911 call. At the hearing, Officer Cunningham identified the defendant, Mouscardy, as the man he saw at the scene. The corner of Belmont and Ferry Streets falls at the boundary of Everett and Malden. When the officers arrived at that location, they ascertained that the assault at issue may have occurred in Malden. As a result, Officer Cunningham called to request the presence of a Malden unit.

While awaiting the Malden Police, Sgt. Zaino met with the female, while Officer Cunningham took the male, Mr. Mouscardy, around the corner on to Belmont Street in Malden. They separated the two parties in order to determine whether they could provide consistent accounts of what had occurred. While Officer Cunningham was walking with the defendant around the corner, the defendant stated that there was no problem and that he had not done anything wrong. After rounding the corner, Officer Cunningham and Mouscardy waited for the arrival of Malden Police. Although there is some dispute about whether Mouscardy and Officer Cunningham communicated before the arrival of Malden Police, I find that any dialogue that did occur was minimal and insignificant.

After a brief period, no longer than a few minutes, Officer Selfridge of the Malden Police arrived.  He spoke first to the female, who stated that no assault had occurred.  The woman appeared upset, but it was not clear to officers whether she was upset with the police or because of a prior assault.  She was not crying and there were no visible bruises.

Officer Selfridge then went around the corner to speak to Mouscardy.  At this point Mouscardy had his back against a wall on Belmont Street.  Officer Cunningham was to his left on the sidewalk speaking to Mouscardy.  Officer Selfridge asked Officer Cunningham whether Mouscardy had told Officer Cunningham his name.  Officer Cunningham replied that Mouscardy had not identified himself.

At this point, Mouscardy appeared nervous and agitated and, according to Officer Selfridge, was "eye-balling" the area. Officer Selfridge asked Mouscardy for his name a number of times, but Mouscardy continued to refuse, instead repeating that nothing had happened.  During this period, Officer Selfridge was about five feet away from the defendant on the sidewalk on Belmont Street; Officer Cunningham was about the same distance away in a different direction.  Mouscardy, who continued to appear agitated, had his right hand in his right jacket pocket and began to move away from the wall on Belmont, forcing Officer Selfridge to continue moving along the sidewalk toward his right in order

3

to maintain the same distance from Mouscardy.

Due to Mouscardy's demeanor, Officer Selfridge became uncomfortable and asked Officer Cunningham whether he had performed a pat-down on Mouscardy to determine whether he had any weapons. Officer Cunningham stated that he had not performed a pat-down. Officer Selfridge then told Mouscardy that he was going to pat him down for weapons and asked Mouscardy to remove his hand from his pocket. Mouscardy refused. Officer Selfridge then initiated the pat-down by placing his hands on Mouscardy's chest. He then moved his hands down Mouscardy's torso. When Officer Selfridge's left hand reached Mouscardy's right pocket, Mouscardy removed his right hand from his pocket and struck Officer Selfridge's hand with enough force to throw it above Officer Selfridge's shoulder. Officer Selfridge then attempted to return his hand to Mouscardy's pocket. Mouscardy attempted to snap Officer Selfridge's hand away again and then pulled away quickly before Selfridge could feel the contents of the pocket. The stitching around Mouscardy's pocket tore, but the contents of the pocket remained enclosed. Mouscardy then ran across Ferry Street onto Rich Street, which also lies at the border of Malden and Everett.

Selfridge and Cunningham pursued Mouscardy on foot, and Selfridge observed Mouscardy pull something from his right coat pocket. Selfridge and Cunningham split up when Mouscardy entered

the backyard of a residence on Rich Street in Everett.  At this point, Selfridge observed that Mouscardy was carrying a gun.  Officer Selfridge informed the other officers that Mouscardy had a gun and continued to pursue the defendant, whom he observed with the gun in his left hand, attempting to climb a chain-link fence.

After several orders from police to not move and put the gun down, the defendant ultimately complied and put the gun on a green container nearby.  When the officers attempted to handcuff the defendant, he resisted and was restrained by the officers.  He was ultimately arrested while on Rich Street in Everett.  The gun was a .32 caliber Berretta pistol loaded with one round.

## II. Discussion

Mouscardy argues that the gun should be suppressed because (1) he was illegally seized after both he and the female at the scene had told officers that nothing had occurred; and (2) the pat-down search was unconstitutional.  He also argues that his flight could not trigger a reasonable suspicion of criminal activity because it was spurred by an illegal pat-down search.

The Court need not address these questions, however, because the evidence at issue was ultimately discovered through a source that was independent from these allegedly unconstitutional means.  I find that Mouscardy struck Officer Selfridge when he attempted to prevent him from feeling Mouscardy's pocket.  Even if the pat-

down was unconstitutional, Mouscardy's actions violated Massachusetts criminal law.  As a result, officers were at that time justified in chasing after him and placing him under arrest.  They legally recovered the weapon and ammunition as an incident to this arrest.

"If a suspect's response to an illegal stop is 'itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime.'" United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir. 1997)(quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir.1982)).  As both Sprinkle and Bailey explain, if this were not the case, then the Fourth Amendment could be used as a shield against prosecution and arrest for any action, no matter how violent, that flows from an unconstitutional search. See Sprinkle, 106 F.3d at 618; Bailey, 691 F.2d at 1018.  The First Circuit recognized a similar principle in United States v. King, 724 F.2d 253 (1st Cir. 1984), when it noted that "the poisonous tree doctrine does not extend as far as a 'but for' causation test might take it." Id. at 256 (quoting J. Israel and W. LaFave, Criminal Procedure, Constitutional Limitations 290 (3d ed. 1980)).  In that case, the court considered whether police legally seized a firearm from a defendant who had shot at a police officer after the defendant had been subject to what the court assumed to be an illegal pat-down search. King, 724 F.2d at 256.  The court dismissed the

defendant's argument that "but for the previous illegality [of the pat-down], the shooting would never have taken place." Id. The court responded that "at the moment the shot was fired" the officer had all the probable cause he needed to search the defendant, no matter what might have served as the impetus for the shot. Id.

To be sure, in this case, the defendant's actions were not as extreme as the defendant's in King. Nonetheless, assaulting a police officer is a violation of Massachusetts criminal law. M.G.L. c. 265, § 13D, criminalizes "assault and battery" upon a public employee. Mouscardy's contact with the police officer was at least powerful enough to force the officer's hand above his shoulder and allow Mouscardy enough time to reach his hand back to his pocket. There is also no question that the contact was intentional.

Mouscardy suggests that he was justified in striking the officer's hand in order to protect himself against the illegal seizure. The Supreme Judicial Court has held, however, that "in the absence of excessive or unnecessary force by an arresting officer, a person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances." Commonwealth v. Moreira, 447 N.E.2d 1224, 1227

(Mass. 1983). <u>Moreira</u> overruled a precedent which allowed for the use of proportional force to resist an illegal arrest. The Supreme Judicial Court found this rule to be inapplicable in "an era of constantly expanding legal protection of the rights of the accused in criminal proceedings, [in which] an arrestee may be reasonably required to submit to a possibly unlawful arrest and to take recourse in the legal processes available to restore his liberty." <u>Id.</u> at 1226. As a result of expanded criminal protections "self-help by an arrestee has become anachronistic." <u>Id.</u> The same reasoning applies in this situation. A number of courts have ruled that "convictions for assaulting an officer after an illegal pat down may stand because of the dangers in permitting citizens to resort to self-help." <u>State v. Coleman</u>, 630 N.W.2d 686, 697 (Neb. Ct. App. 2001)(collecting cases). The question of whether a search or seizure is constitutional will often be a close call. "Such questions, which are only resolved later with the benefit of dispassionate reflection, are particularly ill-suited to the split-second judgment required of police in their interactions with citizenry." <u>Commonwealth v. Gomes</u>, 795 N.E.2d 1217, 12125 (Mass. App. Ct. 2003)(applying <u>Moreira</u> rule to a police officer's unlawful entry into a dwelling).

Here, any force that Officer Selfridge applied to Mouscardy was not excessive. When Mouscardy first hit Officer Selfridge's

hand, the only contact that the officer had made with Mouscardy was consistent with a standard police pat-down. A finding that Mouscardy could resist a standard pat-down would vitiate the rule in <u>Moreira</u> by allowing for self-help in response to all police actions that are not constitutionally authorized. In sum, even if the pat-down was unconstitutional, a question which the Court is not deciding here, Mouscardy's recourse was in the judicial process, not through self-help.

For these reasons, once Mouscardy struck Officer Selfridge, the officers had probable cause to place the defendant under arrest.[1]

## ORDER

The motion to suppress is **DENIED**.

                                            /s/ PATTI B. SARIS
                                            Patti B. Saris
                                            U.S. District Court Judge

---

[1] Mouscardy also raises the state law issue of whether Malden police were authorized to arrest Mouscardy in Everett. Although this question may impact issues arising in state court, it has no bearing on the question here, which is whether police officers violated Mouscardy's federal Fourth Amendment rights. <u>See</u> <u>United States v. Sutherland</u>, 929 F.2d 765, 769-71 (1st Cir. 1991)(reinforcing the rule that violations of state law do not taint evidence used in a federal prosecution).